## JOHN BOSTON, use of JAMES BRITTINGHAM *vs.* ISAAC BRADLEY'S Ex'r.

Construction of the phrase " acknowledgment under the hand of the party of a subsisting demand" in the act of limitation.

It means such acknowledgments as in themselves are a cause of action.

Therefore, if one contracts in writing to deliver goods at market, and to pay over half the proceeds; the cause of action arises from the sale of the goods, and not from the writing; and is barred in three years.

The short entry of the plea of limitation means six or three years, according to the nature of the demand.

In the execution of a commission to take depositions the commissioner need not sign each deposition, if he authenticates the whole.

A commission de bene esse to take the testimony of a witness about to go away, may be executed out of the State, after he has left.

How to take advantage of the act of limitation in case of judgment confessed on a public bond barred at the time of confessing judgment.

OCTOBER term, 1847. This was an action on the case, on a contract in writing, between Boston and Bradley, dated November 7, 1840, *and signed by both parties,* by which Boston agreed to load defendant's schooner with oysters for New York or New Haven, in good order and clean; the vessel to proceed to market, and the defendant to dispose of the oysters to the best advantage for all concerned, and to have one-half the oysters, or proceeds, after they were sold, for his freight.

The plaintiff declared in assumpsit in several counts, one of them setting out the written contract; averring that the defendant sold the oysters, and did not pay the proceeds; and also the common counts for goods sold and delivered, money had and received, &c., and he

proved a sale of the oysters *more than three years before* the commencement of this action.

The act of limitation was pleaded; and the defendant's counsel moved a nonsuit on the ground that no cause of action had been proved within three years.

*Layton*, for plaintiff.—The declaration is upon a written contract which comes within the exception to the act of limitation as "an acknowledgment under the hand of the party of a subsisting demand." (*Dig.* 397.) The demand is acknowledged by this writing; and either party may bring suit upon it in *six years*. The violation of a contract is not the "demand," which may exist without a right of action: as in the case of a promissory note not due; the demand exists from the paper, before any cause of action arises.

*Cullen* and *Saulsbury*, for defendant.—The right of action accrued on the sale of these oysters by Bradley. That cannot be denied. This suit is for the price of the oysters; the half proceeds of sale. The statute begins to run whenever the right of action accrues, and bars in *three* years, except where the cause of action arises from "an acknowledgment under the hand of the party of a subsisting demand." This paper does not acknowledge a subsisting demand. Nor is it the cause of action. The writing which is excepted out of the mischief of the statute, is a paper which *within itself* contains an acknowledgment of a cause of action.

This is an exception from the statute, and must be replied to the plea of the statute. There is no such replication in this case. Issue is taken on the plea of the act. Without such replication, the plaintiff can have no benefit of the exception, if under any form of pleading it would avail. If this exception can be relied on without replying it, why may not infancy, &c. &c. (1 *Harr. Rep.* 51; *Ibid* 134; 1 *Chit. Plead.* 582-3.)

*Bayard*, in reply.—This is not one of the savings of the act; these are contained in another section; and, I admit, must be replied. This is an exception out of the statute; and the short plea of limitation is a plea of three years or six, according to the character of the cause of action. The question between us here is, what is the character of this cause of action. Is it one to which the three year limitation is applicable, or the six year? If we are right that our cause of action is "an acknowledgment under the hand of the party of a subsisting demand," the plea of limitation is actio non accrevit infra sex annos, and our general replication is right. Who ever heard of replying to such a plea in an action on a promissory note, that the cause

of action *is* a promissory note, and not barred in three years? The short plea of "limitation" has reference to the cause of action declared on. Any other construction would be to enable a party to use such short pleading for the purpose of entrapping his adversary.

*By the Court:*

BOOTH, *Chief Justice.*—The short pleading cannot be used for any purpose of injustice. The plea must be construed to mean whatever the party pleading it would be obliged to draw it out if required; and it must be taken to have reference to the cause of action declared on. In this case if the cause of action be an acknowledgment under the hand of the party of a subsisting demand, the plea must be taken to be a plea of limitation applicable to such a demand, to wit, *six* years; and therefore there was no occasion to reply it to the plea.

The statutes of limitation are founded in wisdom and sound policy. They have been termed statutes of repose, and are regarded as highly beneficial. They proceed on the principle, that it is to the interest of the public to discourage the litigation of old or stale demands; and are designed not merely to raise a presumption of payment, but to afford a security against the prosecution of claims, where from lapse of time, the circumstances showing the true nature or state of the transaction, may have been forgotten; or may be incapable of explanation by reason of the uncertainty of human testimony, the death or removal of witnesses, or the loss of receipts, vouchers, or other papers.

The statute of limitation of this State bars the action of assumpsit after the expiration of three years from the time of the accruing of the cause of action. But this limitation does not begin to run in the case of a mutual and running account between the parties, while such account continues open and current: and when the cause of action arises from a promissory note, bill of exchange, or *an acknowledgment under the hand of the party of a subsisting demand*, the action may be commenced at any time within six years from the accruing of the cause of action.

It is insisted by the plaintiff's counsel, that in this case, the act of limitation interposes no bar; because six years have not elapsed from the time of the accruing of the cause of action.

When did the cause of action under this written contract accrue? In November or December, 1840, after the schooner had arrived in New Haven; and when Bradley had sold the oysters, a cause of

action accrued to the plaintiff, to demand his proportion of the proceeds of sale.

It is true, that the right of the plaintiff to sue the defendant, arises from the written contract; but the plaintiff's cause of action or demand for the proceeds of sale accrues upon the breach of the contract on the part of Bradley; that is, in November or December, 1840; and can be established only by parol proof, and not by the production of the written contract. The demand of the plaintiff, therefore, for his proportion of the proceeds of sale, is not shown by any acknowledgment under the hand of Bradley. We recognize the rule laid down by the Court of Errors and Appeals, in Booth *vs.* Stockton, 1 *Harr. Rep.* 55. (*a*)  The acknowledgment in writing under

---

(*a*) The following case, on the bar of the statute of limitation in reference to official bonds, decided in Kent, at the October term, 1838, and accidentally omitted from the reports of that term, is considered of sufficient importance now to justify an insertion, though out of place.

*State, use of Parker* vs. *James Whitaker.* JUDGMENT d. s. b., confessed October 3, 1835, on bond dated May 2, 1831. Rule to show cause why the judgment should not be struck off, being entered *after* the bond was barred by *limitation*.

The judgment was entered on the official bond of Whitaker, as collector of State taxes, and others, his sureties, conditioned in the usual form for the faithful execution of his office, and for payment to the State treasurer of the amount of his duplicate, ($860 40,) on or before November 7, 1831. The bond was taken by C. P. Comegys, State treasurer, under the act of February 6, 1829, (*Dig.* 57,) which prescribes the form, and requires a warrant of attorney to confess judgment. The act of limitation of January 30, 1829, (*Dig.* 397,) directs that no action shall be brought upon the official obligation of any collector, after the expiration of *three* years from the *accruing of the cause of such action.*

At the hearing of the rule, the late State treasurer was examined, subject to exception, and proved repeated promises of payment made by the defendant; but this testimony was subsequently ruled out; the witness being responsible for the collector's default; and interested in the result.

A letter was read in evidence from the defendant to the present State treasurer, P. S. Parker, dated May 2, 1835, distinctly admitting the debt, and promising payment.

*Huffington,* in support of the rule, argued that as the act of limitation barred suits on collector's bonds in three years after the cause of action accrued, this bond was barred, the warrant of attorney void, and the confes-

the hand of the party of a subsisting demand, upon which the action is founded, must in itself establish the plaintiff's claim or cause of action. If it does do so, the action is not barred until after the ex-

sion of judgment without authority; and that no subsequent acknowledgment of this debt could legalize the judgment.

*Frame*, contra, said that the decision made by the Court of Appeals on this defendant's writ of error, (2 *Harr. Rep.* 413,) was a bar to this application; that the act authorizing the collector's bond and warrant was passed after the limitation act, which did not annul the warrant, even though it barred suit; and that this was an application to the equity power of the court to remove an obstruction and let the party into an inequitable defence; and one also, that could not avail him, because in any suit upon the bond, his plea of limitation would be sufficiently answered by the proof of subsequent promises to pay the debt.

*Huffington* replied that the former trial was only on a part of the case, as against this defendant's sureties, and no bar to this motion; that the court was not at present to regard the defence which might hereafter be set up to an action on this bond; but to say whether any valid judgment had ever been entered on it; whether the warrant of attorney to confess judgment was not necessarily suspended when the bond itself was barred.

*Curia advisare vult.*

*By the Court:*

J. M. CLAYTON, *Chief Justice.*—We do not rest the case on any supposed effect of the mere warrant of attorney as taking the case out of the statute. We think it had no such effect independent of the letter. (See *Clark* vs. *Figes*, 2 *Stark.* 234.) But, by analogy to the construction put upon every other statute of limitation barring a suit within a given time *after the accruing of the cause of action*, we hold that the cause of action was revived by the new promise; and that the only mode in which the defendant could have taken advantage of the statute here, was to have applied to the court to let him in to plead the statute after the entry of the judgment, and before he had made any new promise to pay it, so as to *cause the action to accrue again* and be restored at the time of the entry. Nothing can be more erroneous than to suppose that such an entry of judgment was absolutely void, because the limitation had run at the time. To establish such a principle would be virtually to overrule all the leading decisions governing these statutes, which are held to be in pari materia, and demanding the same general rule of construction. The statute of limitation admits the cause of action or consideration of the action still existing, and merely discharges the defendant from the remedy, so that a new promise without any other consideration, is sufficient to revive or restore the action; therefore, if the defendant will take advantage of that circumstance it is neces-

piration of six years from the time the right to sue has arisen. But if it is necessary to establish the plaintiff's demand by oral testimony, although there be a written contract, the case is within all

sary he should plead the statute. (*Hodson vs. Harridge*, 2 *Saund. Rep.* 63 *a, n.* 2.) Hence, the decisions on the statute 21 *Jac.* 1, *ch.* 16, which contains a general limitation in words similar to this, have settled the principle, that although it clearly appears by the declaration that the debt accrued more than six years before, still the plaintiff can recover; and that in such a case the debtor may plead the statute, or waive the advantage. (*Cro. Car.* 163, 181, 404.) Viewing the case here as if there had been no warrant of attorney annexed to this bond, it is clear that had suit been brought upon it after the time fixed in Whitaker's promise to pay, and before three years had elapsed, as for example, at the time of the entry of the judgment, or when he first applied here to plead the statute, the *declaration* on the bond would not have furnished him with any defence to the action, although it would have stated a cause of action arising more than three years before; and had he pleaded *actio non accrevit infra tres annos*, which was his only mode of taking advantage of the statute, that plea would have been fully avoided by the new promise contained in his letter, which revived the remedy, and restored the cause of action. Does then the annexation of a warrant of attorney to confess judgment on the bond, deprive the plaintiff of the benefit of the new promise? If not, why should the judgment be held void after the promise? Is there any equity in driving the State to a new suit on the bond, merely to give the defendant the benefit of the statute of limitation, which we know he had waived at the very time of the entry of the judgment against him? Considering the application as addressed to the equitable discretion of this court, we are at a loss to discover any equity in the defence which it is proposed to set up; and we are well satisfied that in all the cases where the State takes a bond from a public officer for the faithful discharge of his duty, with a warrant of attorney annexed to confess judgment thereon, judgment may be properly entered on such bond notwithstanding the period prescribed by the statute of limitation has run upon the bond, if it can be made appear to the court that at the time of the entry of judgment there was a sufficient promise or acknowledgment of the debt due to save the statute. The State is not excluded from the opportunity of entering its judgment, merely because the time prescribed by the statute has run. It is not to be taken for granted that the public defaulter will plead the statute; but if one should ask leave to do it, he ought, undoubtedly to have leave for that purpose by opening the judgment to let him in to a jury trial, this judgment to stand as a security for what may be recovered in the meantime, unless it clearly appears that his plea would not have availed him when the judgment was entered.

the mischiefs and evils that were intended to be remedied by the statute of limitation, and is barred by that statute.

Our opinion therefore is, that the present suit is not founded on an

The fact does appear from the evidence here, that at the time of the entry of this judgment the defendant had no such defence. Stress was laid in the argument upon the express words of the statute, " No suit shall be brought upon any collector's bond after three years from the accuring of the cause of action, &c.," and it was very properly said by the defendant's counsel, that this was a *suit* on the bond. It was a suit commenced without writ, by virtue of the warrant of attorney, the defendant voluntarily appearing to the plaintiff's declaration, and confessing the judgment in that suit. But the language of this part of the statute is precisely the same with that of other parts, which have always received the same judicial construction, and that is, that suit *may* be commenced, although the time fixed by the statute for it has expired, and although the very record itself discloses that fact. For the law will not presume either that the defendant is entitled to plead it, or that if so entitled he will plead it. It may be, that although the record shows the time has run, yet the cause of action may be saved by some of the exceptions stated in the statute, as by the defendant's absconding or re-moval from the State " before the expiration of the time allowed by this act for bringing the action;" in which case the act directs that "the time during which such person shall have been out of this State shall, in apply-ing *either of the limitations in this act,* be deducted; and that in every such case, at least one year from the return of such person into this State shall be allowed for bringing such action." The law does not presume at the commencement of a suit that the case may not fall within one of these ex-ceptions, nor does it at any time during the prosecution of it, unless the de-fendant pleads the statute, and the plaintiff fails to show that the exception protects him against the plea. And so if the declaration state a cause of action arising ten years ago, and there be no plea of the statute, and judg-ment be entered against the defendant, that judgment cannot be arrested or reversed for error, although it appears on the very face of the record that the time prescribed by the statute for bringing the action had expired before the suit was brought. (See *Blanshard on Limitations* 141-2-3-4, &c.) The reason assigned for this is, that " the statute was made for the case of those who will take advantage of it, and the court will not give a defendant the advantage of it unless he plead it." (*Lee* vs. *Rogers,* 1 *Levin* 111.) Now, in this very case, if we were to grant the motion what would be the order of the court? why, that the judgment should stand as a security for what might be recovered, but that the defendant should be permitted to plead to the action the act of limitation; that is, that the action did not ac-crue within three years before the 3d of October, 1835, when the suit was

acknowledgment under the hand of Bradley of a subsisting demand. And not having been commenced until after the expiration of three years from the time of the accruing of the cause of action, it is barred by the statute of limitation.

On this ground the court would order a nonsuit; but the plaintiff insists on going to the jury on evidence of a new promise or acknowledgment, supposed to be contained in the depositions, which the court, after referring to the evidence, think proper to leave to the consideration of the jury.

Certain depositions were offered in evidence, and objected to on the ground that they were not severally signed by the commissioner. There was a general certificate that the commissioner had executed the commission by calling before him the witnesses (naming them) who were duly sworn, and their depositions were annexed and signed by them.

*Mr. Bayard* said we had no specific rules to be observed in executing commissions, and if the essentials appeared, viz: that the commissioner did what was required of him, and the witnesses were duly sworn and examined, their testimony reduced to writing and signed, and all this certified, it was complete, whether the commissioner signed each deposition or not. The commissioner's name, if written once over a certificate stating every thing necessary, is as good as if signed on each page. Depositions admitted.

The plaintiff now offered the deposition of Wm. Hines, taken by the prothonotary of this court, in the city of New Bedford, in Massa-

institated in this court, and the judgment entered. The State then would show the acknowledgment of the debt, and the written promise to pay it as disclosed in the letter of the defendant, of the 2d of May, 1835, which revives the cause of action, and the verdict on the issue joined, would thus inevitably be for the plaintiff.

The entry on the record which was made under the order of the court, at the hearing of an application made here for relief by the sureties of the collector, at October term, 1836, (2 *Harr. Rep.* 137,) whereby the Attorney General, in behalf of the State, ordered that execution should be stayed as against the sureties, was not equivalent to a release of the principal. An agreement not to sue, or not to execute, is no release of a debt; and this agreement was not even under seal.

Without relying upon any supposed effect of the decision of the Court of Errors against the defendant in the case before them, we are unanimously of opinion that the rule be discharged with costs.

chusetts, on a rule obtained to take depositions of aged, infirm, or going witnesses.

*Mr. Cullen,* objected that the prothonotary had no authority to take this deposition under a de bene esse rule: but insisted, that for the taking testimony out of the State, the plaintiff was bound to issue a general commission.

*Mr. Layton,* said the witness was a going witness when the rule was obtained, and was followed to New Bedford by the prothonotary. The witness was here, and was regularly summoned. Fearing he would go to sea, interrogatories were filed, of which the defendant's counsel refused to take short notice, and before the ten days expired the witness had gone off. We directed the prothonotary to follow him to New Bedford, whence he was to go to sea, on a three years' voyage; and finding him there, he took this deposition.

*Court.*—This is a valid execution of the de bene commission. There is nothing in the constitution to restrict the execution of such a commission within the State; though it is taken in reference to persons in the State, and about to leave it. It would be very inconvenient if the authority to take the deposition of a going witness should cease when he got out of the State, if by following or going with him it might be obtained at a place beyond its borders. The authority given to the prothonotary by the rule in this case, was to take the deposition of Wm. Hines as a way-going witness, which he was at the time, being in the State and about to leave; and his deposition was taken at New Bedford by the prothonotary who followed him there for that purpose. There is nothing in the fact that this way-going witness got out of the State before his deposition was taken which should invalidate it. (2 *Harr. Rep.* 487.)

Deposition admitted.